Reese, J.
delivered the opinion of the court.
In September, 1840, shortly preceding the last Presidential election, the plaintiff in error, Samüel Allen, signed and sealed the following instrument: “For value received, I promise to pay John Dodd two hundred dollars, in specie, whenever Martin Van B,uren is elected President of the 'United States, at this present presidential 'election; and if either Mr. Van Burén or Harrison dies before the election in 1840, then the said Dodd is to receive but orre hundred dollars.”
At the time this instrument was made, Dodd delivered to Allen a grey horse, which was'worth the sum of one hundred dollars. The transaction was a bet or wager upon the result of the pending' presidential contest.. This suit was brought by Dodd, after the result of the election was ascertained, to, recover the value of the horse, or the horse itself, it being an action of debt, with a count in detinue. By the judgment of the Circuit Court, Dodd recovered the value of the horse, and Allen has prosecuted.his appeal in error to this court, for the purpose of reversing that judgment. The matter chiefly insisted on'as error in the argument before us is, that the Circuit Court charged the jury, “that although the contract may have been executed, and the horse delivered before the result of the presidential election was known, and the suit in this case was not instituted until after such result was ascertained, still the condition-of the defendant, to whom the horse was delivered before the result was ascertained, and who retained him afterwards before the suit was brought, was not better than that of the jrlaintihj who might, under any circumstances, treat the contract as a nullity, and well maintain this action.”
The plaintiff in error by his counsel, strenuously, and, as we think, successfully contends that this portion, of the charge is erroneous. If a party comes into court seeking to enforce an immoral or illegal contract, it is most obvious that he must be repelled by the courts if they would not countervail the very end and object of tlicir creation. It is different, indeed, in many cases in principle, when something having been done under such a contract, a party comes, not to enforce it, but in disrc- *133 gard and disaffirmance of it, to right himself for some injury sustained or loss incurred by means of it. This he may do, or not do, according to the time and stage of the affair, the nature of the transaction and other circumstances, in wagering contracts, when the impending event is undecided, and after the event, as against a stake-holder, he may come and disaffirm the contract and recover his property; and on, the ground of the nature of the transaction, he may often do so, where the matter is consummate as in transactions merely illegal, and where the parties, although both in fault, stand in a different relation to the transaction, and the policy and interest of the community are in favor of permitting the one party to set aside the transaction, without permitting which, indeed, it would have been in vain to have declared it illegal; as contracts of an usurious character: and a general principle of distinction has been attempted to be maintained, and in many cases has been recognized between cases, on the one hand, affected by illegality merely, and cases, on the other hand, where the contract was either malum in se, immoral, or contrary to public policy; a party in the former cases being permitted, after the contract is executed and consummated, to invoke the aid of a court of justice to set aside the contract and redress himself, and in the latter cases, being repelled from a court of justice on the ground, that being equally derelict in the transaction towards society, with the party complained of, the court will not hear his case and grant relief, not because his adversary is’not to blame, or equally to blame, but because he having violated law and good morals shall not be heard to alledge that his very cause of action and claim to redress are expressly based upon the fact of such violation of law and morals. In such case the defendant is in the better, that is, in the safer attitude, he being required to say or do nothing; while his adversary has to show the case. Wagering upon elections is a transaction of this latter description. Money or property lost at gaming cannot be recovered back, except by the express provisions of the statute, and in the time’ therein limited. But for the statute, this could not'be done, because of the operation of the general principle above discussed. But wagering upon elections is not embraced by the statutes on the *134 subject of gaining, nor by that which gives to a party losing, the right to recover back his property within ninety days. This case is embraced by the general principles of many cases, a number of which have been referred to in the argument before us. But the very facts and circumstances of this case, occurred in the case of McCullom vs. Gamby, 8 John. 149, in which it was determined in the general, that when, a bet or wager is lost, and the money or property has. been fairly paid or delivered, the court will not help the plaintiff. “And when A delivered to B two ferkins of butter, and agreed that if P was elected Governor of the State B should pay a certain price for the butter, otherwise he was to pay nothing, and P was not elected: It was held, that A had no right of action against B for the butter.”
We are, therefore, of opinion, on grounds of reason and authority, that the verdict and judgment of the court below are erroneous; that the same must be set aside and reversed, and a new trial be had, when the law will 'be charged conformably to this opinion.